**RANDAZZA LEGAL GROUP, PLLC**
Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
Alex J. Shepard (NV Bar No. 13582)
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

*Attorneys for Defendants,*
*Lisa Bloom and the Bloom Firm*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| STEVE WYNN, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>LISA BLOOM, an individual; and THE BLOOM FIRM, a California Professional Corporation,<br><br>    Defendants. | Case No.: 2:18-cv-00609-RFB-GWF<br><br>**DEFENDANTS LISA BLOOM AND THE BLOOM FIRM'S ANSWER AND AFFIRMATIVE DEFENSES** |

Defendants Lisa Bloom and the Bloom Firm submit the following Answer and Affirmative Defenses to Plaintiff Steve Wynn's Complaint and deny all allegations unless expressly admitted below.

## ANSWER

## INTRODUCTION AND BACKGROUND

1. **Allegation**: Plaintiff Steve Wynn ("Mr. Wynn") brings this action to redress false accusations by Defendants published in a press release, which was a public relations ploy intended to pressure Mr. Wynn into paying money to Defendants and their alleged client for a bogus claim of sexual harassment and retaliation.

**Answer:** Denied.

2.  **Allegation**: Mr. Wynn is a visionary, a successful businessman, and a philanthropist.

**Answer**: Admitted to the extent Wynn alleges that he is a public figure. Otherwise, without knowledge and therefore denied.

3.  **Allegation:** Mr. Wynn has been active in the casino and resort development in Las Vegas and beyond for more than forty-five (45) years.

**Answer:** Admitted to the extent Wynn alleges that he is a public figure. Otherwise, without knowledge and therefore denied.

4.  **Allegation:** Mr. Wynn is well-known and recognized for his role in the revitalization of the Las Vegas Strip in the 1990s.

**Answer:** Admitted to the extent Wynn alleges that he is a public figure. Otherwise, without knowledge and therefore denied.

5.  **Allegation:** Mr. Wynn is the entrepreneurial figure behind many of Las Vegas's most distinctive resorts, including The Mirage, Treasure Island, Bellagio, Encore and Wynn Las Vegas.

**Answer:** Admitted to the extent Wynn alleges that he is a public figure. Otherwise, without knowledge and therefore denied.

6.  **Allegation:** In its March 2011 issue, Barron's Magazine recognized Mr. Wynn as one of the top 30 World's Best CEOs.

**Answer:** Admitted to the extent Wynn alleges that he is a public figure. Otherwise, without knowledge and therefore denied.

7.  **Allegation:** In November of 2014, Mr. Wynn was ranked 17th out of the world's 100 best-performing CEOs by Harvard Business Review.

**Answer:** Admitted to the extent Wynn alleges that he is a public figure. Otherwise, without knowledge and therefore denied.

8.  **Allegation:** In its December 2017 100th Anniversary Issue, Forbes Magazine featured an essay by Mr. Wynn, recognizing him as one of the 100 Greatest Business Minds.

**Answer:** Admitted to the extent Wynn alleges that he is a public figure. Otherwise, without knowledge and therefore denied.

9. **Allegation:** On or about January 26, 2018, *The Wall Street Journal* published online an article accusing Mr. Wynn of a decade-long pattern of sexual misconduct ("the January 26 *Journal* article"). The January 26 Journal article was updated January 27.

**Answer:** Admitted.

10. **Allegation:** Mr. Wynn responded to the January 26 *Journal* article, stating, "[t]he idea that I ever assaulted any woman is preposterous" and "[w]e find ourselves in a world where people can make allegations, regardless of the truth, and a person is left with the choice of weathering insulting publicity or engaging in multi-year lawsuits. It is deplorable for anyone to find themselves in this situation."

**Answer:** Admitted.

11. **Allegation:** the publication of the January 26 *Journal* article, Mr. Wynn became a multi-billionaire target of a media and legal frenzy of false accusations, including false accusations of rape.

**Answer:** Admitted that there was a "frenzy" of accusations of sexual misconduct against Wynn and that he is a multi-billionaire. Otherwise, without knowledge and therefore denied.

12. **Allegation:** On March 13, 2018, in an effort to capitalize on and monetize the negative publicity created by the January 26 Journal article as exacerbated by the current "me too" climate in the country, Defendants sent a letter to counsel for Mr. Wynn purportedly describing their client's allegations against Mr. Wynn and threatening legal action unless Mr. Wynn agreed to a mediation of the alleged claims within five (5) days of the date of the letter.

**Answer:** Admitted that Defendants sent a demand letter to Wynn. Otherwise denied.

13. **Allegation:** The alleged claims set forth in the March 13 letter were bogus and Mr. Wynn did not respond to Defendants within their unilaterally imposed deadline.

**Answer:** Admitted that Wynn did not respond to the letter. Otherwise denied.

14. **Allegation:** On March 22, 2018, Defendants issued a Press Release falsely accusing Mr. Wynn of sexually harassing an unidentified individual who was a dancer for the show ShowStoppers at the Encore Theater at Wynn Las Vegas from late 2014 through late 2016 ("the March

22 Press Release"), a true and correct copy of same being attached hereto as Exhibit 1 and by reference made a part hereof.

**Answer:** Admitted that Defendants published a press release. Otherwise denied.

15. **Allegation:** Defendants' sole purpose in issuing the March 22 Press Release was to create additional negative publicity impugning the reputation of Mr. Wynn in the hope that he would pay Defendants and their client money to settle a bogus claim of sexual harassment.

**Answer:** Denied.

16. **Allegation:** The accusations by Defendants do not narrow down to a "he said, she said" dispute – the falsity of the accusations described in the March 22 Press Release can be clearly and convincingly established by a large number of eyewitnesses.

**Answer:** Denied.

17. **Allegation:** Among other false statements, Defendants' March 22 Press Release conveyed that when Mr. Wynn would attend rehearsals for ShowStoppers, the female dancers would be "instructed immediately to strip down to bras and panties" so as to be sexually appealing to Mr. Wynn, who would then sit in the front row of the theatre and "leer" while the female performers danced particularly "physically revealing" segments of the show.

**Answer:** Admitted that the quoted language appears in the press release. Otherwise denied.

18. **Allegation:** The accusations in the March 22 Press Release are false and defamatory, and were published with actual knowledge of falsity.

**Answer:** Denied.

19. **Allegation:** Mr. Wynn never, directly or indirectly, instructed any dancers at any time to strip down to their bras and panties.

**Answer:** Denied.

20. **Allegation:** Mr. Wynn never leered at Defendants' unidentified client or any performer during the rehearsals he attended.

**Answer:** Denied.

21. **Allegation:** When he was in his 20s, Mr. Wynn was diagnosed with a rare and degenerative eye disease, and he has been legally blind for almost two decades.

**Answer:** Without knowledge, therefore denied.

22. **Allegation:** As Defendants recognize on the law firm's website, "[p]osting false and disparaging information is unlawful." *See*, http://www.thebloomfirm.com/practice_area/reputation-management/.

**Answer:** Admitted.

23. **Allegation:** Mr. Wynn brings this action seeking redress for the false and disparaging information unlawfully published by Defendants to third parties worldwide in the March 22 Press Release.

**Answer:** Denied.

## PARTIES

24. **Allegation:** Mr. Wynn is a resident and citizen of the State of Nevada.

**Answer:** Admitted.

25. **Allegation:** Defendant Bloom is a resident and citizen of the State of California.

**Answer:** Admitted.

26. **Allegation:** Defendant Bloom can be served with summons and complaint at her law offices, The Bloom Firm, 20700 Ventura Blvd. Suite 301, Woodland Hills, California, 91364.

**Answer:** Admitted.

27. **Allegation:** Defendant The Bloom Firm is a California Professional Corporation and is a citizen of the State of California.

**Answer:** Admitted.

28. **Allegation:** Defendant The Bloom Firm can be served with summons and complaint via its Registered Agent, Lisa Bloom, at its offices, The Bloom Firm, 20700 Ventura Blvd. Suite 301, Woodland Hills, California, 91364.

**Answer:** Admitted.

29.     **Allegation:** Defendant Bloom is the owner of The Bloom Firm and was authorized to publish the March 22 Press Release in her capacity as owner of The Bloom Firm and on behalf of The Bloom Firm.

**Answer:** Admitted.

## JURISDICTION AND VENUE

30.     **Allegation:** Mr. Wynn and Defendants are citizens of different states and the matter in controversy between them exceeds the sum or value of $75,000.00, exclusive of interest and costs.

**Answer:** Denied.

31.     **Allegation:** This Court has jurisdiction of this civil action pursuant to 28 U.S.C.A. §1332(a)(1).

**Answer:** Calls for a legal conclusion. To the extent an answer is called for, denied.

32.     **Allegation:** Mr. Wynn suffered the injuries alleged herein in the State of Nevada, as well as on a national and international basis.

**Answer:** Denied.

33.     **Allegation:** Defendants published the March 22 Press Release in Nevada, as well as throughout the country and the world, by issuing it to various members of the media, on the Internet, and through social media.

**Answer:** Admitted.

34.     **Allegation:** Defendants directed their tortious conduct at Mr. Wynn, a citizen of Nevada.

**Answer:** Denied.

35.     **Allegation:** Mr. Wynn suffered injury to his reputation in Nevada, as well as on a national and international basis.

**Answer:** Denied.

36.     **Allegation:** All of the actions and activities that form the basis of the March 22 Press Release are alleged to have occurred in Las Vegas, Nevada.

**Answer:** Denied.

37. **Allegation:** Defendants reasonably anticipated being haled into court in Nevada to answer for the falsity of their accusations against Mr. Wynn.

**Answer:** Calls for a legal conclusion. To the extent an answer is called for, denied.

38. **Allegation:** Sufficient contacts exist with respect to this action and the State of Nevada to satisfy the requirements of due process as to both of the Defendants.

**Answer:** Calls for a legal conclusion. To the extent an answer is called for, denied.

39. **Allegation:** This Court has both specific and general jurisdiction of each of the Defendants.

**Answer:** Calls for a legal conclusion. To the extent an answer is called for, denied.

40. **Allegation:** Venue is proper in this Court pursuant to 28 U.S.C.A §1391(b).

**Answer:** Calls for a legal conclusion. To the extent an answer is called for, denied.

## SHOWSTOPPERS

41. **Allegation:** In 2014, Mr. Wynn threw a 50th birthday party gala for his wife, Andrea.

**Answer:** Without knowledge, therefore denied.

42. **Allegation:** As part of the celebration, Mr. Wynn arranged for a show that was comprised of various Broadway numbers and starred Hugh Jackman, along with more than seventy (70) dancers and musicians.

**Answer:** Without knowledge, therefore denied.

43. **Allegation:** The show was so well-received that Mr. Wynn decided to turn the idea into the show "ShowStoppers" for the Encore Theater at Wynn Las Vegas.

**Answer:** Without knowledge, therefore denied.

44. **Allegation:** Mr. Wynn was the Executive Producer of ShowStoppers, working with an Emmy-award winning choreographer, an Emmy-award winning musical director, and Broadway stars from shows such as "Chicago" and "Wicked."

**Answer:** Without knowledge, therefore denied.

45. **Allegation:** When Mr. Wynn attended rehearsals or presentations of ShowStoppers, he always sat in the "house seats," which were in Row F – the 5th row back from the stage (there was no row A).

**Answer:** Denied.

46. **Allegation:** Because of his blindness, Mr. Wynn sat in Row F as it was the best location for him to hear the full orchestra and the vocals.

**Answer:** Denied.

47. **Allegation:** Row F was also the closest row to the stage in the Encore Theater equipped with hand rails adjacent to the seats; hand rails which were utilized by Mr. Wynn due to his blindness.

**Answer:** Without knowledge, therefore denied.

48. **Allegation:** During rehearsals of ShowStoppers, all performers – men and women – were expected to wear audition-appropriate attire.

**Answer:** Denied.

49. **Allegation:** The performers selected their own audition-appropriate rehearsal attire.

**Answer:** Denied.

50. **Allegation:** The ShowStoppers' director requested only that all performers wear black to appear more uniform.

**Answer:** Denied.

51. **Allegation:** When Mr. Wynn attended presentations or rehearsals of ShowStoppers, he was always accompanied by two bodyguards.

**Answer:** Without knowledge, therefore denied.

52. **Allegation:** When Mr. Wynn attended presentations or rehearsals, he was also almost always accompanied by either his wife and/or other individuals, including at various times, celebrities, to watch the rehearsals with him.

**Answer:** Without knowledge, therefore denied.

53.     **Allegation:** The performers in ShowStoppers welcomed Mr. Wynn's attendance at rehearsals because he was enthusiastic and encouraging.

**Answer:** Denied.

54.     **Allegation:** On December 20, 2014, "Steve Wynn's ShowStoppers" celebrated its grand opening in the Encore Theater at Wynn Las Vegas.

**Answer:** Without knowledge, therefore denied.

55.     **Allegation:** ShowStoppers was an extravaganza that featured 35 singers and dancers and a 31-piece orchestra onstage with dazzling sets and costumes.

**Answer:** Without knowledge, therefore denied.

56.     **Allegation:** ShowStoppers was an immediate hit, receiving rave reviews.

**Answer:** Without knowledge, therefore denied.

57.     **Allegation:** ShowStoppers ran for two (2) years, closing on December 31, 2016.

**Answer:** Without knowledge, therefore denied.

## BLOOM'S LITIGATION AND MEDIA PRACTICE

58.     **Allegation:** Defendant Bloom is an attorney who advertises "sexual harassment" and "sexual discrimination" among her primary practice areas. *See* www.thebloomfirm.com.

**Answer:** Admitted.

59.     **Allegation:** Defendants advertise Defendant Bloom's media appearances on their website, asserting that "Lisa Bloom appears on national television and radio commenting on every national issue in America." See http://www.thebloomfirm.com/media-appearances/.

**Answer:** Admitted.

60.     **Allegation:** Defendant Bloom includes in her biographical information the logos for various media outlets, including several networks and shows such as The Ricki Lake Show and Piers Morgan Tonight. See http://www.thebloomfirm.com/lawyer/lisa-bloom/.

**Answer:** Admitted.

61.     **Allegation:** Defendant Bloom relies heavily on social media and has used her Twitter and Facebook accounts to seek new clients to make harassment allegations against potential

defendants, including Mr. Wynn. *See, e.g.,* https://twitter.com/LisaBloom/status/977305324209229824.

**Answer:** Admitted that Defendant Bloom's use of social media has caused individuals to come forward and seek representation. Otherwise denied.

62. **Allegation:** Defendant Bloom advertises herself as having created and executed media strategies to bring down harassers, and she lists Steve Wynn first among the high-profile men against whom she represents "sexual harassment and assault accusers." See http://www.thebloomfirm.com/lawyer/lisa-bloom/.

63. **Answer:** Admitted.

64. **Allegation:** Indeed, Defendants regularly host press conferences in their offices. See http://www.thebloomfirm.com/news-press/

**Answer:** Admitted.

65. **Allegation:** Defendant Bloom has made media statements, including on CBS This Morning, and issued several tweets about her representation of unidentified clients who have made accusations against Mr. Wynn. See, e.g, CBS News, "Steve Wynn faces new sexual misconduct allegations," (Feb. 28, 2018), avail. at https://www.cbsnews.com/news/steve-wynn-new-sexual-misconduct-allegations/; https://twitter.com/LisaBloom/status/977305324209229824; https://twitter.com/LisaBloom/status/976885810803937281; https://twitter.com/LisaBloom/status/964570905052577792.

**Answer:** Admitted.

66. **Allegation:** Historically, Defendant Bloom has used the media to prosecute individuals in the court of public opinion where there are no rules of evidence and accusations are often made by anonymous individuals based on rumor, hearsay and sources who are not credible.

**Answer:** Denied.

### THE MARCH 22 PRESS RELEASE

67. **Allegation:** Defendants published the following statements in the March 22 Press Release about Wynn:

     a.    The headline: "NEW WOMAN ACCUSES STEVE WYNN OF SEXUAL HARASSMENT VIA HER ATTORNEY, LISA BLOOM".

     b.    "I represent a new woman alleging sexual harassment and retaliation against Steve Wynn."

     c.    "Yet when Mr. Wynn stopped in to the rehearsals, which he did often when he was in town, the female dancers were instructed immediately to strip down to bras and panties, put on heels, and apply extra makeup so as to be sexually appealing to Mr. Wynn."

     d.    "Mr. Wynn would then sit in the front row of the theater and leer while the female performers danced particularly physically revealing segments of the show."

     e.    "Many cast members, including my client, considered Mr. Wynn's demands humiliating."

     f.    "She considered his demands unprofessional and demeaning."

     g.    "These small acts of rebellion in the face of the most powerful man in Las Vegas were followed by her being sent to the back of dance routines or removed from show routines altogether."

     h.    "Witnesses who worked on the show have confirmed our client's allegations about Mr. Wynn's offensive behavior to us."

*See* Exhibit 1.

**Answer:** Admitted.

68.    **Allegation:** With the exception of the statement that Defendants represent a former performer, all of the statements identified in Paragraph 66 above are false and defamatory.

**Answer:** Denied.

69.    **Allegation:** The events described in the March 22 Press Release never occurred.

**Answer:** Denied.

70.    **Allegation:** Several of the statements by Defendants in the March 22 Press Release are directly contradicted by statements made by Defendants in their March 13 letter.

**Answer:** Denied.

71. **Allegation:** Prior to issuing the March 22 Press Release, Defendants contended that their unidentified client was instructed to strip down to bra and panties or "booty shorts," which are acceptable outerwear for dance rehearsals.

**Answer:** Denied.

72. **Allegation:** Prior to issuing the March 22 Press Release, Defendants falsely accused a specific woman – not Mr. Wynn – of issuing the instruction that their unidentified client "strip down."

**Answer:** Denied.

73. **Allegation:** Prior to issuing the March 22 Press Release, Defendants also falsely accused a woman – not Mr. Wynn – of retaliating against their client.

**Answer:** Denied.

74. **Allegation:** As intended by Defendants, media reports on the March 22 Press Release picked up and republished the salacious gist of the March 22 Press Release, conveying that Mr. Wynn personally took actions against the performers. See, e.g., L. Eustachewich, "Wynn allegedly punished dancer who refused to 'strip down' at rehearsal," New York Post (Mar. 22, 2018), avail. at https://nypost.com/2018/03/22/wynn-allegedly-punished-dancer-who-refused-to-strip-down-at-rehearsal/ (last accessed Apr. 3, 2018); N. Dillon, "Broadway dancer accuses casino mogul Steve Wynn of forcing her to strip during 'Showstoppers' rehearsals," Daily News (Mar. 22, 2018), avail. at http://www.nydailynews.com/news/national/dancer-accuses-steve-wynn-forcing-strip- rehearsals-article-1.3890472 (last accessed Apr. 3, 2018).

**Answer:** Admitted that media outlets reported on the March 22, 2018 press release. Otherwise denied.

75. **Allegation:** Prior to the publication of the March 22 Press Release, Defendants had actual knowledge that the accusations conveying that Mr. Wynn personally gave instructions to the performers to strip, leered at their client and retaliated against her for allegedly refusing to strip, were false and defamatory.

**Answer:** Denied.

76. **Allegation:** Years prior to the publication of the March 22 Press Release, Mr. Wynn's blindness had been widely reported in the media and was a matter of public knowledge.

**Answer:** Denied.

77. **Allegation:** Upon information and belief, prior to the publication of the March 22 Press Release, Defendants had actual knowledge that Mr. Wynn was legally blind.

**Answer:** Denied.

## DEMAND FOR RETRACTION

78. **Allegation:** On March 23, 2018, Mr. Wynn sent a retraction demand to Defendants, a true and correct copy of same being attached hereto as Exhibit 2 and by reference made a part hereof.

**Answer:** Admitted.

79. **Allegation:** On March 29, 2018, in response to a letter from Defendants claiming a need for clarification, Mr. Wynn sent a renewed demand for retraction, a true and correct copy of same being attached hereto as Exhibit 3 and by reference made a part hereof.

**Answer:** Admitted.

80. **Allegation:** On March 31, 2018, in response to yet another letter from Defendants claiming a need for further clarification, Mr. Wynn sent a third demand for retraction, a true and correct copy of same being attached hereto as Exhibit 4 and by reference made a part hereof.

**Answer:** Admitted.

81. **Allegation:** Defendants have failed to retract the false and defamatory accusations in the March 22 Press Release.

**Answer:** Denied.

## CAUSE OF ACTION FOR DEFAMATION

82. **Allegation:** Mr. Wynn incorporates by reference paragraphs 1 through 80 of this Complaint as though set forth herein in their entirety.

**Answer:** Calls for no response.

- 13 -
Answer and Affirmative Defenses
2:18-cv-00609-RFB-GWF

83. **Allegation:** Defendants published the false and defamatory allegations against Mr. Wynn in the March 22 Press Release to third parties, including members of the media, on the Internet, and via social media.

**Answer:** Denied.

84. **Allegation:** Defendants' false and defamatory statements and false gist were published to third parties without privilege.

**Answer:** Denied.

85. **Allegation:** The March 22 Press Release was reported on by numerous media outlets, and the false and defamatory accusations contained therein were republished, which was both reasonably foreseeable and intended by Defendants.

**Answer:** Denied.

86. **Allegation:** The March 22 Press Release contained numerous false and defamatory statements, including the Defamatory Statements listed in Paragraphs 66 and 67 above and set forth in Exhibits 2, 3, and 4 to this Complaint.

**Answer:** Denied.

87. **Allegation:** The gist of the March 22 Press Release is that Mr. Wynn sexually harassed a performer in ShowStoppers by "leering" at the female performers in ShowStoppers after instructing that they "strip down" to their bras and panties at each rehearsal he attended.

**Answer:** Denied that the gist is that Wynn personally gave instructions to female performers. Otherwise admitted.

88. **Allegation:** The salacious and accusatory gist of the March 22 Press Release is false and defamatory.

**Answer:** Denied.

89. **Allegation:** The factual statements alleged to support the false and defamatory gist of the March 22 Press Release are false and defamatory.

**Answer:** Denied.

90. **Allegation:** Defendants published these false accusations and false gist with actual malice.

**Answer:** Denied.

91. **Allegation:** At the time of publication, Defendants had actual knowledge that the accusations published in the March 22 Press Release were false.

**Answer:** Denied.

92. **Allegation:** At the time of publication, Defendants had actual knowledge that the statements published in the March 22 Press Release were false as evidenced by the undisputed fact that Defendants alleged facts in their March 13 letter that contradicted statements in the March 22 Press Release and its gist.

**Answer:** Denied.

93. **Allegation:** Defendants published the accusations in the March 22 Press Release with a reckless disregard for the truth.

**Answer:** Denied.

94. **Allegation:** Defendants published the accusations in the March 22 Press Release without a credible, unbiased source.

**Answer:** Denied.

95. **Allegation:** In publishing the accusations in the March 22 Press Release, Defendants knowingly and intentionally misrepresented the truth and manufactured false information out of whole cloth.

**Answer:** Denied.

96. **Allegation:** Defendants published the accusations in the March 22 Press Release without conducting a reasonable investigation.

**Answer:** Denied.

97. **Allegation:** In publishing the accusations in the March 22 Press Release, Defendants purposefully avoided the truth by failing to interview any of the individuals who they claimed at one point were responsible for the alleged misconduct set forth therein.

**Answer:** Denied.

98. **Allegation:** The "story" told in the March 22 Press Release is inherently improbable and obvious reasons existed to raise serious concerns about the truth of the "story" and of the gist of the March 22 Press Release.

**Answer:** Denied.

99. **Allegation:** The false accusations published in the March 22 Press Release constitute libel per se in that they tend to injure Mr. Wynn in his trade, business, or profession and they accuse Mr. Wynn of personal misconduct in his business and of serious sexual misconduct.

**Answer:** Denied.

100. **Allegation:** Damages to Mr. Wynn are presumed by law since the defamation is per se.

**Answer:** Denied.

101. **Allegation:** Defendants published the false and defamatory March 22 Press Release with constitutional malice, thereby entitling Mr. Wynn to an award of punitive damages.

**Answer:** Denied.

102. **Allegation:** Defendants' conduct was willful and demonstrates that entire want of care that raises a conscious indifference to consequences.

**Answer:** Denied.

103. **Allegation:** Mr. Wynn is further entitled to an award of punitive damages to punish Defendants for their unlawful conduct and to deter them from repeating such misconduct in the future.

**Answer:** Denied.

104. **Allegation:** As a result of Defendants' conduct, Mr. Wynn has incurred attorneys' fees and costs for the protection of his interests.

**Answer:** Denied.

## AFFIRMATIVE DEFENSES

Defendants' affirmative defenses set forth herein are based solely upon Plaintiffs' allegations in the Complaint, which do not describe the events and claims therein with sufficient particularity to enable Defendants to determine all of the defenses that might exists to their claims. Without these and other details, Defendants cannot respond further to Plaintiffs' Complaint. Therefore, Defendants reserve the right to assert and rely upon additional defenses that become available or apparent during the pendency of this action and to modify the affirmative defenses herein as additional information is obtained by Defendants.

Defendants assert the affirmative defenses set forth below, each as separate and distinct affirmative defenses to Plaintiffs' alleged causes of action. Insofar as any of the following expresses denial of an element of any claim alleged against Defendants, that denial does not indicate that Plaintiffs are relieved of their burden to prove each and every element of any such claims or that Defendants have assumed any burden of proof. Defendants hereby give notice that they intend to rely upon such other and further defenses as may become available or apparent during, for example, pre-trial proceedings in this case, and hereby reserve the right to amend this Answer and offer or assert additional defenses that cannot now be articulated because, among other reasons, Defendants have not completed discovery.

### First Affirmative Defense

### Truth

1. Although the burden of proof for falsity is upon Plaintiff, Defendants aver that all statements allegedly made by Defendants complained of by Plaintiff are true.

2. Any complained-of statements allegedly made by Defendants that may happen to lack 100% factual veracity are substantially true, and thus treated as true as a matter of law.

3. As truth is an absolute defense to defamation, Defendants cannot be liable for Plaintiff's claim.

**Second Affirmative Defense**

**Substantial Truth**

1. Any statements made by Defendants complained of by Plaintiff that are not literally true are substantially true, in that the "gist" or "sting" of the statements is true.

2. As substantial truth is a defense to claims for defamation, Defendants cannot be liable for Plaintiff's claim.

**Third Affirmative Defense**

**Opinion or Rhetorical Hyperbole**

1. The statements at issue in the Complaint are either statements of opinion based on disclosed facts or statements of rhetorical hyperbole that no reasonable reader is likely to interpret as a literal statement of fact – for example, whether Wynn was "leering" is a matter of opinion.

2. Statements of opinion based on disclosed facts and statements of rhetorical hyperbole cannot form the basis of defamation claims, and so Defendants cannot be liable for Plaintiff's claim.

**Fourth Affirmative Defense**

**Lack of Actual Malice**

1. Due to his extreme general notoriety in the Las Vegas community and nationwide, and particularly the public controversy involving allegations of sexual misconduct against him, Plaintiff is a general or limited purpose public figure.

2. Defendants did not make any statements at issue with any degree of fault, much less the actual malice required for Plaintiff to prevail on his defamation claim.

**Fifth Affirmative Defense**

**Libel-Proof Plaintiff**

1. A plaintiff whose reputation cannot be injured any further than it already has cannot bring a defamation claim based on statements that do not cause additional harm.

2. Prior to Defendants' publication of their statements, Plaintiff's reputation was harmed so severely by allegations of a much more severe nature than those at issue here, that his reputation could not have been injured any further by Defendants' statements.

**Sixth Affirmative Defense**

**Incremental Harm**

1. A plaintiff whose reputation that has already been injured cannot bring a claim for statements that are *less* damaging to the plaintiff's reputation than the statements made.

2. Prior to Defendants' publication of their statements, Plaintiff's reputation was harmed so severely by allegations of a much more severe nature than those at issue here, that his reputation could not have been injured any further by Defendants' statements.

**Seventh Affirmative Defense**

**Lack of Damages**

1. To prevail on a claim for defamation, a plaintiff must be able to show damages.

2. Defendants' statements are not defamatory *per se*, as they do not fall into any category of statements recognized as creating a presumption of harm.

**3.** Due to damage to Plaintiff's reputation that already existed at the time of Defendants' statements, Plaintiff cannot show that he suffered any cognizable harm as a result of the statements.

**Eighth Affirmative Defense**

**Failure to State a Claim**

1. Plaintiff has failed to sufficiently plead the elements of a cause of action for defamation as to any Defendant.

Dated this 8th day of May, 2018.

Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
Alex J. Shepard (NV Bar No. 13582)

*Attorneys for Defendants,
Lisa Bloom and the Bloom Firm*

Case No. 2:18-cv-00609-RFB-GWF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 8, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

Trey A. Rothell,
Randazza Legal Group, PLLC