UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| STEVE WYNN, an individual, <br><br> Plaintiffs, <br> v. <br><br> LISA BLOOM, an individual; and THE BLOOM FIRM, a California Professional Corporation, <br><br> Defendants. | Case No.: 2:18-cv-00609-JCM-GWF <br><br> **ORDER** <br><br> **Re: Motion for Discovery (ECF No. 34)** |

This matter is before the Court on Plaintiff Steve Wynn's Motion for Discovery to Respond to Defendants' Special Motion to Dismiss Pursuant to NRS 41.660 (ECF No. 34), filed on March 26, 2019. Defendants filed their Opposition (ECF No. 41) on April 10, 2019, and Plaintiff filed his Reply (ECF No. 43) on April 17, 2019. The Court conducted a hearing in this matter on April 24, 2019.

## BACKGROUND

On March 13, 2018, attorney Lisa Bloom of the Bloom Firm sent a letter to the attorneys for Steve Wynn stating that her law firm represented Angelina Mullins regarding her claims against Mr. Wynn arising out of her performance contract with the entertainment show "Showstoppers" at the Wynn Las Vegas hotel-casino. *Motion to Dismiss* (ECF No. 18), *Exhibit 21 (March 13, 2018 Letter)*. The letter stated that "Ms. Mullins was subjected to an unprofessional, demeaning, and sexually objectifying demand: that every single time Mr. Wynn came to rehearsal, Ms. Mullins was to strip down to a bra and 'booty shorts' or panties, freshen her makeup, and wear high-heels. She was required to make every effort to become as sexually

1

pleasing to Mr. Wynn as possible. She would then be paraded in front of Mr. Wynn either through dancer inspections or through short rehearsals of particularly sexy numbers. Ms. Mullins regularly refused to comply with this demand, and she suffered retaliation for her refusal. We present you this letter in an effort to negotiate a pre-litigation settlement of Ms. Mullins' legal claims." *Id.* at pg. 1. The factual allegations were further spelled out in the letter. Ms. Bloom gave Mr. Wynn's attorneys five days to contact her regarding possible mediation. *Id.* at 4. Mr. Wynn's attorneys did not respond to the letter.

On March 22, 2018, Ms. Bloom and the Bloom Firm issued a public press release entitled **"NEW WOMAN ACCUSES STEVE WYNN OF SEXUAL HARASSMENT VIA HER ATTORNEY LISA BLOOM"**. *Complaint* (ECF No. 1), *Exhibit 1 (March 22, 2018 press release)*. The March 22, 2018 press release stated as follows:

> I represent a new woman alleging sexual harassment and retaliation against Steve Wynn. She has not spoken to the media and she wishes to remain anonymous at this time. Here is her story.
>
> My client is a highly skilled professional dancer, currently on a national tour. She danced on Broadway before she was hired to dance for the show "Showstoppers" at the Wynn Las Vegas from late 2014 through late 2016.
>
> "Showstoppers" was not a nude nor a semi-nude show.
>
> During rehearsals, dancers would normally wear jazz pants, tank tops, or other casual fitness wear. Yet when Mr. Wynn stopped in to the rehearsals, which he did often when he was in town, the female dancers were instructed immediately to strip down to bras and panties, put on heels, and apply extra makeup so as to be sexually appealing to Mr. Wynn.
>
> Mr. Wynn would then sit in the front row of the theater and leer while the female performers danced particularly physically revealing segments of the show.
>
> Many cast members, including my client, considered Mr. Wynn's demands humiliating.
>
> My client was disgusted by Mr. Wynn's behavior. She considered his demands unprofessional and demeaning. And so she would often not strip down, or would do so only partially. These small acts of rebellion in the face of the most powerful man in Las Vegas were followed by her being sent to the back of

2

> dance routines, or removed from show routines altogether. The experience was highly stressful and upsetting to her.
>
> Witnesses who worked on the show have confirmed our client's allegations about Mr. Wynn's offensive behavior to us.
>
> We have sent letters to attorneys for Mr. Wynn and Wynn Resorts about these acts of sexual harassment and retaliation and have yet to receive any meaningful response.
>
> My client is willing to cooperate in any investigation.

Mr. Wynn's lawyer sent a March 23, 2018 letter to Ms. Bloom demanding a complete retraction of the March 22, 2018 press release. Ms. Bloom responded on March 27, 2018, disputing the assertions made by Mr. Wynn's attorney, but expressing a willingness to revise or clarify the press release if appropriate. Mr. Wynn's lawyer sent a second letter on March 29, 2018 demanding a complete retraction. Ms. Bloom apparently responded to this letter on March 30, 2018, and Mr. Wynn's attorney then sent an email on March 31, 2018, again demanding a retraction.[1]

On April 5, 2018, Ms. Bloom and the Bloom Firm issued an updated press release. *Motion to Dismiss* (ECF No. 18), *Exhibit 23*. The April 5, 2018 press release stated that when Mr. Wynn dropped by rehearsals, "the female dancers were instructed by their supervisors immediately to strip to bras and panties, put on heels, and apply extra makeup so as to be sexually appealing to Mr. Wynn. However, Mr. Wynn now claims that he was unaware of these instructions. We look forward to finders of fact getting to the truth of who knew what, and when, and how this was tolerated." The press release stated that "[m]y client perceived Mr. Wynn to be looking at the dancers in a way she considered to be leering. Mr. Wynn claims that he was legally blind at the time, and thus unable to leer at women. We look forward to finders of fact getting to the truth of this disputed issue."

Mr. Wynn filed his complaint for defamation against Ms. Bloom and the Bloom Firm on April 5, 2018. *Complaint* (ECF No. 1). Plaintiff alleges that the statements in the March 22, 2018 press release constitute libel *per se* and were published by Defendants with constitutional

---

[1] With the exception of Ms. Bloom's March 30, 2018 communication, the letters and email are attached as exhibits to the complaint or Defendant's motion to dismiss.

3

malice. *Id.* at ¶ 98-100. On May 5, 2018, Defendants filed their Special Motion to Dismiss Pursuant to NRS 41.660 (ECF No. 18). On January 18, 2019, the Court denied Defendant's special motion to dismiss, without prejudice, noting that Defendant Lisa Bloom's deposition was scheduled for January 28, 2019 and that Mr. Wynn represents he may need to take additional depositions in furtherance of litigating Defendants' special motion. Ms. Bloom's deposition was taken on January 28, 2019. The parties have not been able to agree on the scope of additional discovery that Plaintiff may take in order to prepare his opposition to Defendants' special motion to dismiss which was refiled on March 28, 2019.

## **DISCUSSION**

Nevada Revised Statute (NRS) 41.660.1, known as Nevada's "anti-SLAPP" statute, provides that if an action is brought against a person based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern, the person against whom the action is brought may file a special motion to dismiss. Subsection 3 states that upon the filing of the special motion to dismiss, the court must determine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern. If the moving party meets this initial burden, then the court must determine whether the plaintiff has established by clear and convincing evidence a probability of prevailing on the claim. In deciding the motion, the court must consider such evidence, written or oral, by witnesses or affidavits, as may be material in making a determination whether the parties have met their respective burdens.

NRS 41.660.3(e) provides that discovery in the action is stayed pending a ruling on the special motion, or the disposition of an appeal from the ruling on the motion. However, upon a showing by a party that information necessary to meet or oppose a burden is in the possession of another party or a third party and is not reasonably available without discovery, the court shall allow limited discovery for the purpose of ascertaining such information. This statutory authorization for some discovery is consistent with Rule 56(d)(2) of the Federal Rules of Civil Procedure which states that if the nonmovant shows by affidavit or declaration that, for specified

reasons, it cannot present facts essential to justify its opposition, the court may allow time to obtain affidavits or declarations, or to take discovery. In *Planned Parenthood v. Center for Medical Prog.*, 890 F.3d 828, 833-34 (9th Cir. 2016), the court stated that if an anti-SLAPP motion challenges the factual sufficiency of plaintiff's claim, then it must be treated like a motion for summary judgment under Rule 56. Discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court.

Defendants' motion to dismiss is based on a challenge to Plaintiff's assertion that the March 22, 2018 press release was published with "constitutional malice." To establish a prima face case of defamation under Nevada law, a plaintiff must prove (1) a false and defamatory statement by the defendant concerning the plaintiff, (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *Wynn v. Smith*, 117 Nev. 6, 16 P.3d 424, 427 (2001); *Shafer v. City of Boulder*, 896 F.Supp.2d 915, 940 (D.Nev. 2012). If the plaintiff is a public figure, then the defendant may not be held liable unless actual malice is pleaded and proven. *Id.* To show actual malice, the plaintiff must demonstrate that the defendant either knew the statement was false, or made the statement with reckless disregard for whether it was true. To prove recklessness, the plaintiff must show that the defendant published the statement with a high degree of awareness of its probable falsity or must have had serious doubts as to its truth. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 668, 109 S.Ct. 2678, 2686 (1989) (citing *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 215 (1964) and *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1325 (1968)). *See also Makaeff v. Trump University, LLC*, 715 F.3d 254, 265 (9th Cir. 2013) and *Wynn v. Smith*, 16 P.3d at 430-31.

There is no dispute that Steve Wynn is a public figure. He was so recognized in *Wynn v. Smith*, 16 P.3d at 426, and *Wynn v. Chanos*, 75 F.Supp.3d 1228, 1238 (N.D.Cal. 2014). The allegations of the complaint also demonstrate his status as a public figure. *Complaint* (ECF No. 1), at ¶¶ 2-8. For purposes of their anti-SLAPP motion, Defendants concede that the statements made in the March 22, 2018 press release may be taken as false. They argue that the complaint must nevertheless be dismissed because Mr. Wynn cannot show by clear and convincing

evidence that Defendants published the allegedly defamatory statements with actual malice. *Motion to Dismiss* (ECF No. 18), at 21; *Motion to Dismiss* (ECF No. 36), at 22.

In support of his motion for additional discovery, Plaintiff cites *St. Amant v. Thompson*, 390 U.S. at 732, 88 S.Ct. at 1326, in which the Court stated:

> The defendant in a defamation action brought by a public official cannot . . . automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.

Plaintiff also cites *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. at 668, 109 S.Ct. at 2686, in which the Court noted that the lower court appeared to base its finding of actual malice on professional standards and the newspaper's motive in publishing the defamatory article. The Court stated that courts must be careful not to place too much reliance on such factors. A plaintiff is entitled, however, to prove the defendant's state of mind through circumstantial evidence, "and it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry." Bad motive or ill will is not the deciding factor, however. Even if the publisher intends to harm the public official or public figure, he cannot be held liable unless he knew the published material was false, or acted with reckless disregard to its falsity.

In support of their motions to dismiss, Defendants have attached the declarations of Angelina Mullins, Colt Prattes, Samuel Cahn-Temes, and Lauren Molina. *Motion to Dismiss* (ECF No. 18), *Exhibits 17, 18, 19,* and *20.* Defendants have represented that they interviewed Ms. Mullins and the witnesses, and obtained the information set forth in their declarations, prior to the publication of the March 22, 2018 press release. The written declarations were not obtained, however, until after Plaintiff's complaint was filed. Ms. Mullins' declaration tracks the information set forth in Ms. Bloom's March 13, 2018 letter and the March 22 and April 5, 2018

6

press releases.  Colt Prattes is Ms. Mullins' husband and a professional dancer.  He did not work in the Showstoppers production or personally observe the conduct alleged by Ms. Mullins.  He states that Ms. Mullins told him about Mr. Wynn's conduct, and he observed the emotional impact that it had on his wife.  Samuel Cahn-Temes worked as a male dancer in Showstoppers from September 1, 2014 through August 31, 2015.  He personally observed the conduct described in Ms. Mullins' declaration and in the press releases, and states that he was shocked and disgusted by the requirements placed on the female dancers when Mr. Wynn came to rehearsals.  Lauren Molina worked as a female dancer in Showstoppers for a brief period, October 7, 2014 to November 7, 2014.  During that period, she observed the conduct described in Ms. Mullins' declaration and in the press releases.

Ms. Bloom was unable to answer a number of questions during her deposition on matters relating to the investigation of Ms. Mullins' allegations before and after the March 22, 2018 press release.  She testified that her associate, Jordan Oslin, performed much of the investigative work relating to the case, including interviewing the witnesses who corroborated Ms. Mullins' allegations.  *Motion for Discovery* (ECF No. 34), *Exhibit 10 ("Bloom Deposition")*, at 25:1-9; 31:5-33:17.  Plaintiff argues that information regarding the investigation, and whether Defendants knew that the allegations against Mr. Wynn were false, or had serious doubts about their truthfulness, may be contained in the Defendants' files.  Plaintiff is reasonably entitled to obtain documents relating to Defendants' investigation of Ms. Mullins' allegations.  Because Mr. Oslin played a significant role in the investigation, Plaintiff is entitled to take his deposition.  Plaintiff asserts that there may be other attorneys or employees of the Bloom Firm who participated in the investigation that he may want to depose.  The need for such depositions is speculative at this point, and, therefore, are not authorized.[2]

Plaintiff wishes to depose Angelina Mullins, Colt Prattes, Samuel Cahn-Temes, and Lauren Molina.  Ms. Mullins is obviously a key witness and Plaintiff is permitted to take her

---

[2] In support of their renewed motion to dismiss, Defendants have submitted an expert witness report by Charles J. Glazer, Esq., who opines that Defendants complied with journalistic standards in issuing the March 22, 2017 press release.  Defendants do not object to Plaintiff taking Mr. Glazer's deposition.

7

deposition. Mr. Prattes, Mr. Cahn-Temes and Ms. Molina corroborated Ms. Mullins' allegations in their written declarations. Plaintiff is also permitted take their depositions, but they will be limited to two (2) hours each.

Plaintiff also seeks to depose two other individuals that Defendants interviewed, but whose identities have not been disclosed. Defendants have not asserted that they relied on the statements of these unidentified witness to corroborate Ms. Mullins' allegations. Ms. Bloom testified that "there are two others who I believe [Mr. Oslin] interviewed. I can't testify under oath that they were before March 13th or after March 13th. . . . I don't know their names off the top of my head. . . . But it would be in the file. . . . They were both in the show ShowStoppers. I believe one was a dancer and one was a singer." *Bloom Deposition*, at 33:15-25. In response to the question why declarations were not obtained from these individuals, Ms. Bloom stated: "Because people are very intimidated by Steve Wynn, especially after he sued me." *Id.* at 120:14-17. Ms. Bloom believed the information provided by these individuals was consistent with Ms. Mullins' allegations regarding Mr. Wynn's behavior. *Id.* at 121:20-122:6. At this point, Plaintiff will not be permitted to depose these two individuals because Defendants have not affirmatively relied on their statements to support the good faith of the allegations in the March 22, 2018 press release. If information in Defendants' file materials or Mr. Oslin's testimony indicate these individuals materially contradicted Ms. Mullins' allegations, then Plaintiff may renew his request to take their depositions.

Plaintiff's counsel also states that they may seek to depose approximately 70 individuals who either worked as performers in Showstoppers and/or would have knowledge regarding whether Mr. Wynn directed or requested that female dancers dress or behave in the manner alleged by Ms. Mullins. Plaintiff's counsel assert that they cannot interview or obtain declarations from these individuals because they are bound by nondisclosure agreements with the Wynn organization which Mr. Wynn no longer controls. Plaintiff, therefore, allegedly needs to subpoena these individuals to appear for depositions in order to obtain testimony to counter Ms.

Mullins' allegations.[3] These proposed depositions are of only limited relevance and not proportional to the needs of the case as it relates to the anti-SLAPP motion. Defendants have conceded for purposes of their motion that the statements in the March 22, 2018 press release are false. Thus, Plaintiff is not required to prove the falsity of the press release in order to defeat the motion to dismiss. There is no evidence that Defendants communicated or attempted to communicate with any representatives of Mr. Wynn, other than his lawyers, before issuing the press release. There is also no evidence that Defendants communicated, or attempted to communicate with performers or other person involved in Showstoppers other than the persons they have identified. Whether Defendants' alleged failure to adequately investigate Ms. Mullins' allegations supports a finding of actual malice can be determined without the need to depose numerous individuals who Defendants might have contacted in an effort to verify the allegations.

Even under general discovery, each side is limited to ten depositions, and must obtain leave of court to take more than that number. Fed.R.Civ.P. 30(a)(2)(A)(i). Seventy-plus depositions is an extraordinary number, and it is very doubtful that the Court will allow anywhere near that number of depositions if Plaintiff is successful in defeating Defendants' motion to dismiss. To permit such an excessive number of depositions would undermine the purpose of the anti-SLAPP statute. As the Nevada Supreme Court stated in *John v. Douglas County School District*, 125 Nev. 746, 219 P.3d 1276, 1280 (2009), "a SLAPP lawsuit is characterized as 'a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights.' *Dickens v. Provident Life and Acc. Ins. Co.,* 117 Cal.App.4th 705, 11 Cal.Rptr.3d 877, 882 (2004) (quoting *Wilcox v. Superior Court (Peters),* 27 Cal.App.4th 809, 33 Cal.Rptr.2d 446, 449 n. 2 (1994), *abrogated on other grounds by Equilon Enterprises v. Consumer Cause, Inc.,* 29 Cal.4th 53, 124 Cal.Rptr.2d 507, 52 P.3d 685, 694 n. 5 (2002)). The hallmark of a SLAPP lawsuit is that it is filed to obtain a financial advantage over one's adversary by increasing litigation costs until the adversary's case is weakened or abandoned.

---

[3] Plaintiff's counsel suggests that these individuals are likely to be willing to speak with them and provide declarations in support of Mr. Wynn if they are released from the restrictions of their non-disclosure agreements. If this is so, Plaintiff can presumably file a motion that these individuals be permitted to speak with his counsel in regard to the allegations made in the March 22, 2013 press release.

9

1 | *U.S. Ex Rel. Newsham v. Lockheed Missiles,* 190 F.3d 963, 970 (9th Cir.1999)." *See also Pope*
2 | *v. Fellhauer*, 437 P.3d 171, at *2 (Nev. March 21, 2019) (unpublished disposition); and
3 | *Metabolic Research, Inc. v. Ferrell*, 693 F.3d 795, 799-800 (9th Cir. 2012). While Plaintiff must
4 | be afforded a fair and reasonable opportunity to muster evidence to defeat the motion to dismiss,
5 | the Court also has a duty to ensure that the discovery process is not abused to achieve the goals
6 | that the anti-SLAPP statute is intended to prevent. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Discovery to Respond to Defendants' Special Motion to Dismiss Pursuant to NRS 41.660 (ECF No. 34) is **granted**, in part, and **denied**, in part as follows:

1. Plaintiff is permitted to take the depositions of Jordan Oslin, Charles Glazer, Esq., Angelina Mullins, Colt Prattes, Samuel Cahn-Temes, and Lauren Molina. The depositions of Mr. Prattes, Mr. Cahn-Temes, and Ms. Molina are limited to two hours each. The depositions of Mr. Oslin, Mr. Glazer, and Ms. Mullins may be for up to one full day of seven (7) hours each.

2. Plaintiff is permitted to serve requests for production of documents to obtain information related to Defendants' investigation of the allegations made by Angelina Mullins against Mr. Wynn, including any information obtained or received by Defendants that contradicted or cast doubt on the credibility of Ms. Mullins' allegations. Defendants are not required to produce documents that they obtained or received about unrelated allegations concerning Mr. Wynn, unless Defendants have asserted those allegations in support of their motion to dismiss. Plaintiff shall limit his requests for production to the scope of discovery authorized by this order. As stated at the hearing, Defendants are not required to respond to Plaintiff's proposed requests for production of (1) the retainer agreement or letter of engagement between Defendants and their attorneys in this action; (2) insurance policies that may provide coverage for claims alleged against Defendants; or (3) documents relating to the damages allegedly suffered by Angelina Mullins. (Items (2) and (3) will be relevant and discoverable if

. . .

Defendants' motion to dismiss is denied.)

**IT IS FURTHER ORDERED** that within seven (7) days of this order, the parties shall submit a proposed schedule for completion of the authorized discovery, together with a briefing schedule on Defendants' Renewed Motion to Dismiss Pursuant to NRS 41.660 (ECF No. 36).

DATED this 2nd day of May, 2019.

_____
**GEORGE FOLEY, JR.
UNITED STATES MAGISTRATE JUDGE**